[Cite as *In re K.H.*, 2016-Ohio-4784.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTERS OF: | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| K.H. AND K.C. | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | |
| | : | |
| | : | Case No. CT2016-0001 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Juvenile Division, Case Nos.
21330239 and 21330240

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT:     June 30, 2016

APPEARANCES:

For Appellant

PETER N. CULTICE
58 North Fifth Street
Zanesville, OH  43701

For K.H. and K.C.

FRED SEALOVER
P.O. Box 2910
Zanesville, OH  43702-2910

For Appellee

GERALD V. ANDERSON II
27 North Fifth Street
P.O. Box 189
Zanesville, OH  43702-0189

Guardian ad Litem

KEVIN VAN HORN
715 Adair Avenue
Zanesville, OH  43701

*Farmer, P.J.*

{¶1} On November 8, 2013, appellee, Muskingum County Children Services, filed a complaint alleging K.H., born October 4, 2008, and K.C., born June 14, 2011, to be neglected and/or dependent children. Mother of the children is appellant, Kayla Hayes; father of K.H. is Christopher Dalton and father of K.C. is Jonathan Commeans. Neither father is a party to this appeal.

{¶2} Following a shelter care hearing, the children were placed in appellee's temporary custody. A case plan was filed on December 5, 2013.

{¶3} An adjudicatory hearing was held on February 6, 2014, wherein the children were found to be neglected and dependent. The dispositional hearing followed and the trial court placed the children in the temporary custody of Christopher and Diana Riggs.

{¶4} On November 5, 2014, appellee filed a motion for an order of legal custody of the children to the Riggses. Appellant also filed a motion for legal custody on January 21, 2015. Hearings were held on March 16, and September 28, 2015. By judgment entry filed November 23, 2015, the trial court awarded legal custody of the children to the Riggses.

{¶5} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

I

{¶6} "THE JUDGMENT ENTRY OF THE COURT AWARDING LEGAL CUSTODY OF THE CHILDREN TO CHRISTOPHER AND DIANA RIGGS IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶7}   Appellant claims the trial court's decision on legal custody is against the manifest weight of the evidence.

{¶8}   R.C. 2151.353(A)(3) states the following in pertinent part:

(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings.

{¶9}   We agree with the following analysis set forth by our brethren from the Eighth District in *In re D.T.,* 8th Dist. Cuyahoga Nos. 100970 and 100971, 2014-Ohio-4818, ¶ 19-22:

Legal custody is significantly different than the termination of parental rights in that, despite losing legal custody of a child, the parent of the child retains residual parental rights, privileges, and responsibilities. *In re G.M.,* 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14, citing R.C. 2151.353(A)(3)(c).  In such a case, a parent's right to regain custody is not permanently foreclosed. *In re M.J.M.* [8th Dist. Cuyahoga No. 94130, 2010-

Ohio-1674] at ¶ 12.  For this reason, the standard the trial court uses in making its determination is the less restrictive "preponderance of the evidence."  *Id.* at ¶ 9, citing *In re Nice,* 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001).  "Preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value.  *In re C.V.M.,* 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7.

Unlike permanent custody cases in which the trial court is guided by the factors outlined in R.C. 2151.414(D) before terminating parental rights and granting permanent custody, R.C. 2151.353(A)(3) does not provide factors the court should consider in determining the child's best interest in a motion for legal custody.  *In re G.M.* at ¶ 15.  We must presume that, in the absence of best interest factors in a legal custody case, "the legislature did not intend to require the consideration of certain factors as a predicate for granting legal custody."  *Id.* at ¶ 16.  Such factors, however, are instructive when making a determination as to the child's best interest.  *In re E.A.* [8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193] at ¶ 13.

The best interest factors include, for example, the interaction of the child with the child's parents, relatives, and caregivers; the custodial history of the child; the child's need for a legally secure permanent placement; and whether a parent has continuously and repeatedly failed to substantially remedy the conditions causing the child to be placed outside the child's home.  R.C. 2151.414(D).

Because custody determinations " 'are some of the most difficult and agonizing decisions a trial judge must make,' " a trial judge must have broad discretion in considering all of the evidence. *In re E.A.* at ¶ 10, quoting *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). We therefore review a trial court's determination of legal custody for an abuse of discretion. *Miller v. Miller,* 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

*Accord, In re L.D.,* 10th Dist. Franklin No. 12AP-985, 2013-Ohio-3214; *Stull v. Richland County Children Services,* 5th Dist. Richland Nos. 11CA47 and 11CA48, 2012-Ohio-738.

{¶10} In its judgment entry filed November 23, 2015, the trial court found the following as to appellant:

The Court finds that Mother *completed Stanton Villa; does have Section 8 Voucher; completed mental health assessment and is counseling at Six County; completed 103 random drug screens out of 157 possible random drug screens and completed parent education.* However, despite those reasonable efforts made by Muskingum County Children Services, it continues to be in the best interest of the children, Not to be returned home because *Mother has missed 54 random drug screens; Mother tested positive for THC and Opiates; Mother has had no unsupervised visitation*

*since the case opened; Mother does not have appropriate/independent housing; Mother has failed to attend all of the children's medical appointments and required treatments/injections.*

{¶11}  We note the trial court's findings are lacking in specificity and are cursory at best.  The trial court used a form similar to a traffic court entry and merely filled in the blanks.

{¶12}  The case began in November 2013 because of a domestic violence incident between appellant and Mr. Commeans wherein appellant was the aggressor.  *See* Report of Investigation attached to Complaint filed November 8, 2013; September 28, 2015 T. at 14-15.  A case plan was filed on December 5, 2013.  The objectives in the case plan for appellant included substance abuse assessment, random drug screenings, mental health assessment, anger management, obtain housing and income, complete parenting classes, and attend the children's appointments.  March 16, 2015 T. at 9; September 28, 2015 T. at 9.  The case plan did not instruct appellant to stay away from Mr. Commeans.

{¶13}  As for substance abuse assessment, appellant completed Stanton Villa and continuing care with Genesis Recovery.  March 16, 2015 T. at 9; September 28, 2015 T. at 9*.*  She completed mental health assessment at Six County, completed anger management through Tompkins, and completed parenting classes.  *Id.* at 10; *Id.*  She obtained and has maintained employment and recently obtained a Section 8 voucher for housing*. Id.; Id.*  She has attended some of the children's appointments, but not all.  *Id.; Id.* at 10.

{¶14} During the March 16, 2015 hearing, the caseworker explained appellee's continuing concern was with the medical condition of one of the children. The child has juvenile polyarticular arthritis and needs to be monitored very closely and receive injections to control inflammation. March 16, 2015 T. at 10. Appellee wanted appellant to attend all of the children's medical appointments and remain familiar with the child's medical condition. *Id.* Out of twenty-seven appointments for K.H., appellant attended four, and for K.C., appellant attended one appointment out of eighteen. *Id.* at 11. During the March hearing, the caseworker admitted appellant completed every objective of the case plan and appellee's only concern "has to do with her attendance at medical appointments." *Id.* at 14-15. The caseworker was also concerned with appellant's contact with Mr. Commeans, as he had done nothing to meet the objectives of his case plan. *Id.* at 19. The caseworker agreed this concern would be addressed if the trial court ordered no contact with Mr. Commeans during appellant's parenting time. *Id.* At the March hearing, appellant was seven and a half months pregnant with Mr. Commeans's child. *Id.* at 92.

{¶15} At the start of the September 28, 2015 hearing, appellant presented to the trial court a civil protection order she had obtained against Mr. Commeans on August 31, 2015. September 28, 2015 T. at 6-7. Mr. Commeans was incarcerated at the date of the hearing and was expected to be released in November 2015. *Id.* at 16. His criminal history did not involve violence, "mostly theft and nonpayment of child support." *Id.* at 26. During this hearing, the caseworker stated appellant submitted to one hundred and three random drug screens out of one hundred and fifty-seven. *Id.* at 9. The caseworker admitted "[o]f those missed, seven were due to the number not working, busy signal. I

did not call her. Part of it was because she was in Stanton Villa, so that was a good bit of them." *Id.* The caseworker stated appellant "was positive for marijuana on five, opiates on two of them, but the opiates were due to having a baby. She completed a hair follicle test in October of 2013 and was positive for marijuana. She was referred to Six County. She did complete that assessment." *Id.* As for attending the children's medical appointments, the caseworker testified since the March hearing, appellant was "doing better as far as getting to the appointments." *Id.* at 10. The caseworker stated the only change from the March hearing was the civil protection order. *Id.*

{¶16} Appellant gave birth in June of 2015 and the child resides with appellant and appellee has no problems or concerns regarding this child. *Id.* at 12. The caseworker observed the infant in appellant's care and the infant was doing well and the infant's needs were being met. *Id.* at 18. When questioned as to the reasoning for not wanting the children returned to appellant even though she basically completed her case plan, the caseworker stated "[t]he continued contact" with Mr. Commeans. *Id.* at 13. The caseworker did not have any confidence that appellant would abide by the civil protection order. *Id.* at 22.

{¶17} The caseworker testified the children have been in the legal custody of the Riggses since November 2013 and were "thriving." March 16, 2015 T. at 13. Christopher Riggs is the pastor to the children's maternal grandmother. *Id.* The Riggses have cooperated with appellee in trying to reunify the children with appellant. September 28, 2015 T. at 23-24. In fact, they made the one child available so appellant could administer the necessary injections. *Id.* at 24.

{¶18} In finding the children should not be returned to appellant, the trial court noted she had missed "fifty-four random drug screens" and tested positive for THC and opiates. The caseworker testified seven of the missed drug screens were due to the number not working or it was busy or she did not call her, and a "good bit of them" were missed because appellant was in Stanton Villa as directed by her case plan. September 28, 2105 T. at 9. Appellant's Drug Testing Schedule and Results, attached to the trial court's November 23, 2015 judgment entry, indicates appellant did not have any "no-shows" after December 2, 2014, which means appellant complied with random drug testing for over nine months prior to the September 2015 hearing. As for the positive drug screens, the caseworker explained appellant tested positive for opiates because she had just given birth, and the Drug Testing Schedule and Results indicate appellant last tested positive for THC on May 7, 2014, over sixteen months prior to the September 2015 hearing. By the March 2015 hearing, appellant had completed substance abuse assessment at Stanton Villa and continuing care with Genesis Recovery. March 16, 2015 T. at 9.

{¶19} The trial court also found appellant "had no unsupervised visitation since the case opened." The caseworker stated the reason visitation was supervised after appellant had completed the case plan had to do with location, not supervision at the agency, as transportation was easier for appellant to the agency. March 16, 2015 T. at 20-21. Appellant had custody of her newborn and appellee did not have any problems or concerns as the infant's needs were being met. September 28, 2015 T. at 12, 18.

{¶20} The trial court also found appellant did not have "appropriate/independent housing." At the March hearing, appellant was residing with her uncle, and there was no

testimony that the arrangement was unsuitable. By the September hearing, appellant was still living with her uncle, but had obtained a Section 8 voucher for housing. September 28, 2015 T. at 9. Clearly appellant made efforts toward independent living.

{¶21} Lastly, the trial court found appellant "has failed to attend all of the children's medical appointments and required treatments/injections." During the September hearing, the caseworker stated appellant was doing better at attending the appointments, and agreed the Riggses were making the child available so appellant could administer the injections which was going well. September 28, 2015 T. at 10, 21, 23-24. No further testimony was taken on this issue, as the bulk of the hearing focused on appellant's prior contact with Mr. Commeans, which appellant remedied by obtaining a civil protection order against him. It is interesting to note that the March hearing primarily focused on the medical appointments issue which was barely touched upon during the September hearing.

{¶22} We find appellant has completed the required objectives of the case plan and has even obtained a civil protection order against Mr. Commeans even though the case plan did not instruct her to stay away from him.

{¶23} Based upon the foregoing, we find the trial court abused its discretion in granting legal custody of the children to the Riggses.

{¶24} The sole assignment of error is granted.

{¶25} The judgment of the Court of Common Pleas of Muskingum County, Ohio, Juvenile Division, is hereby reversed, and the matter is remanded to said court for further proceedings consistent with this opinion.

By Farmer, P.J.

Delaney, J. and

Baldwin, J. concur.

SGF/sg 601